## U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wanglap Yam, individually, and on behalf of all others similarly situated | CLASS ACTION |
| Plaintiff | JURY DEMAND |
| v. | Case No. 23-CV-9793 |
| Qi Xin, a/k/a Brandon Qi; China Summit Capital, LLC | |
| Defendants. | |

## CLASS ACTION COMPLAINT

The Plaintiff, Wanglap Yam, individually and on behalf of all similarly situated individuals, hereby brings this Class Action Complaint against Defendants Qi Xin, a/k/a Brandon Qi and China Summit Capital, LLC. The Plaintiff states as follows to the Court and Jury for his causes of action against Defendant:

## JURISDICTION AND VENUE

1.  Plaintiff Wanglap Yam is a natural person and Chinese citizen. He resides in Hong Kong, China.

2.  Defendant Qi Xin is a natural person. Based on information and belief, Qi Xin graduated from Columbia University in New York, and has primarily resided in Washington and New York ever since. Based on information and belief, Qi Xin has a Green Card and is in the process of applying for U.S. Citizenship. He has been issued a social security number. For purposes of diversity jurisdiction, Qi Xin is a domicile of Washington or New York.

3.  Defendant China Summit Capital, LLC is a Washington limited liability company. Qi Xin is China Summit Capital's registered agent and its only member. For purposes of diversity jurisdiction, China Summit Capital, LLC is domiciled in Washington and/or New York.

1

4. Qi Xin established and maintains a website for China Summit Capital at – https://chinasummitcap.com/

5. On China Summit Capital's website, Qi Xin states that he is China Summit Capital's founder and CEO. He describes China Summit Capital as a subsidiary of a multinational corporation called Zhongsheng International Group. He claims that "Zhongsheng International Group has established a large scale in the United States, and has developed into a capital group integrating real estate investment, immigration, high-end study abroad, unicorn equity and IPO investment, family trust, etc."

6. China Summit Capital's website includes pictures of Qi Xin with well-known politicians and being interviewed on TV, in order to portray Qi Xin as a prominent and successful person:

 

7. Defendant Qi Xin and China Summit Capital's fraudulent scheme at issue in this case was directed towards tricking the Plaintiff, and other members of the class, into wiring hundreds of thousands of dollars to Defendant Qi Xin's bank account in New York[1] for services

---

[1] Defendant's wiring instructions identified his address as 270 Park Ave., New York, New York 10017.

to be performed by IvyMountain International, LLC – a fake company that Defendant Qi Xin led Plaintiff and others to believe was established and operating in New York.

8. This Court has personal jurisdiction over Defendant Qi Xin because he maintains a residence in New York, purportedly operates at least one business in New York, and the fraud at issue in this case took place in New York.

9. According to Qi Xin, Defendant China Summit Capital has offices in, and operates in, both New York and Shanghai:



10. This Court has personal jurisdiction over Defendant China Summit Capital because it has an office in, and operates in, New York, and the fraud at issue in this case took place in New York.

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the amount in controversy exceeds $75,000.

12. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1694(a).

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of

interest and costs, and involves at least one class member who is a citizen of a state different from the Defendant.

14. Venue is proper in the Southern District of New York because most – if not all – of Defendants' conduct at issue took place in this district.

## STATEMENT OF FACTS

15. This lawsuit involves a scheme by Defendants Qi Xin and China Summit Capital to defraud the Plaintiff and other similarly situated Chinese parents' out of hundreds of thousands of dollars, based on the false promise that their supposed company/subsidiary – IvyMountain International, LLC – would help their children gain admission into the best universities in the United States.

16. The Defendants tricked the Plaintiff, and many other similarly situated Chinese parents, into believing that their company/subsidiary – IvyMountain International, LLC – had a significant staff of admissions officers, with substantial expertise and connections for helping Chinese students gain admissions into elite universities in the United States. In reality, there is no such company as IvyMountain International, LLC and there is no such staff. The company is fake and does not employ anyone with any substantial expertise in helping students gain admission into college. It is just a front that Defendant Qi Xin and China Summit Capital use to fraudulently induce Chinese parents into paying Qi Xin hundreds of thousands of dollars for nothing.

17. On Defendant China Summit Capital's website, Defendant Qi Xin markets a fake educational consulting business.[2] He uses several names for this fake business, including "Ivy Mountain International, LLC" and "MeiTeng International Education." He claims that this business is "a subsidiary of Zhongshen International Group" that is headquartered in Manhattan,

---

[2] After Plaintiff provided Defendant Qi Xin with a pre-filing draft copy of this lawsuit, he immediately took down this portion of the website.

New York, USA. But neither business is registered or authorized to operate in New York. Defendant's fake business is purely a fiction that Defendants use to defraud Chinese parents, like the Plaintiff, out of hundreds of thousands of dollars.

18. On Defendant China Summit Capital's website, Qi Xin claims that his fake education consulting business has assembled an elite team of admissions officers from the Top 30 most prestigious schools in the United States, including professional consultants, career development mentors and clerical teachers. This is blatantly false, as no such company even exists, and Qi Xin does not employ any such staff.

19. On Defendant China Summit Capital's website, Qi Xin markets that his fake education consulting business has an "established a guaranteed admission plan." This "guaranteed admission plan" is the focus of Qi Xin's fraud at issue in this case.

20. Through their fake education consulting business, China Summit Capital and Qi Xin "guarantee" Chinese parents that they will get their children admitted into at least one of their top choices for college in the United States, based on their staff's extensive expertise and connections. Qi Xin then charges these Chinese parents an exorbitant "educational consulting fee" and promises that he will refund a significant portion of this fee if their child is not admitted into one of the elite U.S. college and universities enumerated in the contract. Then, Qi Xin does nothing and keeps the entire educational consulting fee, regardless of whatever happens with the victims' admissions process.

21. In early 2023, the Plaintiff fell victim to Defendants' scheme.

22. In late 2022 / early 2023, the Plaintiff's daughter was trying to gain admission into some of the top colleges in the United States. She had straight As and had scored in the top 1% on

5

the American College Test (ACT), so she was a highly qualified and attractive candidate for admission based on merit.

23.　　Wanglap Yam wanted to help his daughter have the best chance for admission.

24.　　As is consistent with his scheme, Qi Xin represented to Wanglap Yam, directly and/or through an intermediary, that Ivy Mountain International, LLC – part of China Summit Capital – had extensive staff, connections, and expertise for helping Chinese students, like his daughter, gain admission into the top U.S. colleges. Qi Xin represented that Ivy Mountain International, LLC had played a key role in helping many other Chinese students gain admission into such universities. Qi Xin represented to Wanglap Yam, directly and/or through an intermediary, that Ivy Mountain International, LLC would provide these services for his daughter for a substantial fee.

25.　　Qi Xin's representations to Wanglap Yam were false on many levels. Ivy Mountain International, LLC had no employees and cannot even legally operate in New York.  It did not have a staff of admissions officers or any other special expertise or connections that would help Wanglap Yam's daughter gain admission into a top college in the United States.

26.　　At the time Qi Xin made these representations, he *knew* they were false.

27.　　Qi Xin made these false statements to Wanglap Yam, directly and/or through an intermediary, to induce Wanglap Yam into paying him hundreds of thousands of dollars.

28.　　Based on Qi Xin's fraudulent representations, Wanglap Yam entered into a Commission Contract for School Application Services ("Contract") with IvyMountain International, LLC. A copy of that contract is attached hereto as **Exhibit A**.[3]

---

[3] Exhibit A is a certified translation of the original, which was in Mandarin Chinese.

29. Wanglap Yam was introduced to Qi Xin and his fake company through a third-party intermediary, Bright Range Limited. Although this intermediary signed the Contract with IvyMountain International, LLC on behalf of Wanglap Yam, Wanglap Yam was at least an intended third-party beneficiary to that Contract.[4]

30. Under the Contract, Wanglap Yam was required to pay IvyMountain International, LLC $250,000 in exchange for IvyMountain, LLC providing educational consulting services, directed toward helping Wanglap Yam gain admission into Harvard, Yale, Columbia, Cornell, and/or Princeton.

31. The Contract provided that if Wanglap Yam's daughter did not gain admission to at least one of Harvard, Yale, Columbia, Cornell and/or Princeton, IvyMountain International, LLC would refund half of Wanglap Yam's money ($125,000) back to him.

32. Qi Xin had another person – Zhiran Cheng – sign the contract on behalf of IvyMountain, LLC, as its purported "Secretary of the Board of Directors." Qi Xin did this in order to further the illusion that IvyMountain, LLC was a real company, which had an organizational structure and substantial staff.

33. After the contract was executed, Qi Xin directed Wanglap Yam, directly and/or through an intermediary, to wire him the $250,000 to his *personal* bank account with Bank of America. Qi Xin explained this request on the basis that he had a lot of clients and a lot of money was being wired into IvyMountain, LLC's bank account. Qi Xin provided these explanations to cover-up the fact that IvyMountain, LLC was not a real company and could not get a U.S. bank account.

---

[4] In China, it is not unusual to sign contracts through a broker or intermediary.

34. After Wanglap Yam wired the $250,000 to Qi Xin, neither Qi Xin, China Summit Capital, nor their fake business/subsidiary, IvyMountain, LLC, did anything to help Wanglap Yam's daughter gain admission into any of the target schools identified in the Contract. Instead, Qi Xin simply pocketed the money.

35. In the Spring of 2023, Wanglap Yam's daughter was not admitted into any of Harvard, Yale, Columbia, Cornell, or Princeton.

36. After his daughter was not admitted into these schools, Wanglap Yam requested that Qi Xin and China Summit Capital return half of the money he had paid ($125,000). But they refused to refund any portion of Wanglap Yam's money.

37. After refusing to refund the money, Qi Xin threatened Wanglap Yam that if he asserted a legal claim to try to get his money back, Qi Xin would make sure that Wanglap Yam's children would never be able to come to the United States. Qi Xin claimed that he has close relationships with U.S. immigration officers[5] and had the power to prevent Wanglap Yam's children from ever getting legal authorization to study in, or visit, the United States. Based on information and belief, Qi Xin has made similar threats against other Class members who have asked for all or some of their money back.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action individually and on behalf of all similarly situated individuals pursuant to Fed. R. Civ. P. 23(b). Plaintiffs seek to represent a class defined as follows:

> All individuals who entered into education consulting contracts with IvyMountain, LLC, MeiTeng International Education, Qi Xin, China Summit Capital, or paid education consulting fees to IvyMountain, LLC, MeiTeng International Education, Qi Xin and/or China Summit Capital.

---

[5] On China Summit Capital's website, Qi Xin also claims that it has expertise with respect to immigration consulting services.

39. Alternatively or concurrently, Plaintiffs seek to represent a sub-class defined as follows:

> All individuals (1) who entered into education consulting contracts with IvyMountain, LLC, MeiTeng International Education, Qi Xin, and/or China Summit Capital; (2) whose children did not gain admission to one or more of the target schools enumerated therein; but (3) whose money IvyMountain, LLC, MeiTeng International Education, Qi Xin and/or China Summit Capital refused to refund.

40. Excluded from the Class are any members of the judiciary assigned to preside over this matter and any immediate family member of Qi Xin.

41. Upon information and belief, members of the class are so numerous that joinder of all members is impracticable. Although the exact number of members of the class is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

42. Plaintiff's claims are typical of the claims of the members of the class that Plaintiff seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other members are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiffs and to the Class. As alleged herein, Plaintiff and the class have all suffered damages as a result of Defendants' fraudulent representations about his fake business and the services it supposedly provides.

43. There are many questions of law and fact common to the claims of the Plaintiff and the class, and those questions predominate over any questions that may affect individual members. Common questions for the class include, for example: whether Defendant's representations about his fake business are false, whether his fake business is a RICO "enterprise," whether Defendants operated that fake business through a series of predicate criminal acts, whether

9

Qi Xin's representations about his business and supposed services constitute deceptive and unfair business practices, and whether Qi Xin fraudulently induced the Plaintiff and other class members to enter into the Contract.

44. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication. This is particularly true since all – or nearly all – of the Class are based in China and weary of availing themselves of the U.S. legal system, particularly given Qi Xin's threats to the Plaintiff and other class members if they pursue legal action.

45. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions.[6] Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel has any interest adverse to those of the other members of the Class.

46. IvyMountain, LLC does not exist and is merely an alter ego for Qi Xin.

47. Defendant China Summit Capital is vicariously liable for the Defendant Qi Xin's actions herein, because Qi Xin acted as an authorized agent of China Summit Capital with respect to his conduct alleged herein.

---

[6] *See e.g., Ladd, et al. v. Nashville Booting*, No. 3:20-cv-00626, Dkt. 80 (M.D. Tenn. May 11, 2023) (granting plaintiffs' motion for class certification and appointing undersigned counsel); *Palmer, et al. v. Cognizant*, No. 17-6848-DMG (PLAx), Dkt. 384 (C.D. Cal. Oct. 27, 2022) (same).

## CAUSES OF ACTION

### Count I – Civil RICO / 18 U.S.C. § 1962(c)

48. The material allegations set forth above are incorporated by reference as if fully set forth herein.

49. RICO Persons. At all relevant times, Wanglap Yam and all other class members were persons within the meaning of 18 U.S.C. §§ 1961(3). At all relevant times, Defendants Qi Xin and China Summit Capital were also persons within the meaning of 18 U.S.C. § 1961(3).

50. Defendants' fraudulent scheme at issue in this case is exactly the type of racketeering activity RICO was designed to redress. Qi Xin used China Summit Capital, IvyMountain, LLC, and others purportedly associated with China Summit Capital and/or IvyMountain, LLC to repeatedly scam the Plaintiff and other class members out of hundreds of thousands of dollars. China Summit Capital and the fake New York company lent legitimacy to and helped evade detection of this criminal enterprise.

51. The RICO Enterprise. IvyMountain, LLC is a fictitious company and association in fact that is represented to be a company that provides educational consulting services. In reality, it is an ongoing criminal enterprise engaging in illegal acts. Through this fictitious entity and association in fact – IvyMountain, LLC – Defendants participate in the commission of wire fraud through a sophisticated systemic scheme of defrauding Chinese parents, like the Plaintiff and other class members, based on a series of false promises about its extensive staff of admissions officers and record of helping Chinese students gain admission to elite U.S. universities.

52. Qi Xin and China Summit Capital conducted IvyMountain, LLC through a pattern of racketeering activity. While Qi Xin and China Summit Capital held IvyMountain, LLC out as a legitimate company that had a staff of admissions officers and a strong record of helping Chinese

students gain admission to elite U.S. universities, it was merely a front for Defendants to scam the Plaintiff and other Chinese parents in the class out of hundreds of thousands of dollars for nothing.

53. Qi Xin and China Summit Capital recruited others, including Zhiran Cheng, to participate in and lend legitimacy to their fraudulent scheme.

54. As for continuity, the pattern of racketeering activity satisfies either an open-ended or closed-ended standard. Under the open-ended standard, Defendants' racketeering activity has been continuous through a pattern of ongoing conduct in his ordinary course of business. As pleaded herein, Defendants have regularly used IvyMountain, LLC to defraud members of the class like he did with the Plaintiff. Based on information and belief, Defendants are still using IvyMountain, LLC to collect, and attempt to collect, payments from Chinese parents under fraudulent pretenses, and therefore poses a significant threat of continuing to do so in the future. Under the close-ended standard, Defendants' pattern of racketeering activity suffices. Upon information and belief, the pattern of racketeering activity continues through today.

55. Predicate acts. Defendants have engaged in a pattern of racketeering activity. Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of IvyMountain, LLC as an enterprise as described above through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). Specifically, Defendants' false representations about IvyMountain, LLC and the services it provides – to Plaintiff and other Class members – constituted wire fraud in violation of 18 U.S.C. § 1343. Qi Xin's threats to improperly influence U.S. immigration officials in retaliation for the Plaintiff or other class members seeking return of their money is also a federal crime and predicate act of racketeering activity.

56. Under RICO, the Plaintiff and class are entitled to *all* of their money back, plus pre-judgment interest, as well as trebled (3x) damages and attorneys' fees.

## Count II – Fraud

57. The material allegations set forth above are incorporated by reference as if fully set forth herein.

58. Defendants falsely represented to the Plaintiff and other members of the class, directly and/or through intermediaries, that IvyMountain, LLC was a real company that had a staff of admissions officers who could help their children obtain admission into the top colleges and universities in the United States.

59. At the time Defendants made these representations, they knew they were false. Qi Xin knew that IvyMountain, LLC was not a real company and that he did not have a staff of admissions officers who could help Chinese students obtain admission into the top universities in the United States. At the time, Defendants also did not intend to provide any meaningful services – just to dupe the Plaintiff and other Class members into paying hundreds of thousands of dollars for nothing.

60. Based on Defendant Qi Xin's fraudulent misrepresentations, the Plaintiff and other members of the class entered into the Contract (or materially similar versions of it) with IvyMountain, LLC, and sent hundreds of thousands of dollars to Defendant(s). If Defendants had told the truth – that IvyMountain, LLC was a fake company and they intended to just pocket the money – neither the Plaintiff nor any other member of the class would have ever sent Defendant(s) any of their money.

61. As a result of Defendants' fraudulent misrepresentations, the Plaintiff and other members of the Class have lost hundreds of thousands of dollars.

62. Defendants' conduct was intentional and reckless and meets the standard for punitive damages.

### Count III – Violation of New York Consumer Protection Act

63. The material allegations set forth above are incorporated by reference as if fully set forth herein.

64. The Defendants' conduct in the scheme outlined in this Complaint was primarily directed towards tricking people like the Plaintiff into sending payments to the Defendant in New York for services that were supposed to be performed in New York. As such, NY GBL § 349 applies. *See e.g., People v. H&R Block, Inc.*, 847 N.Y.S.2d 903, 903 (2007) (defendants could be liable under GBL § 349 for misrepresentations and omissions that led both in state and out of state customers to invest in the XIRA New York money market account" because " the XIRA customer completed the transaction by depositing his or her funds in a New York money market account").

65. Defendants' conduct was unfair and deceptive in violation of the N.Y. CLS Gen. Bus. § 349. Defendants represented that IvyMountain, LLC was a company established in New York that had an extensive staff of admissions officers and long history of helping Chinese students obtain admission to top universities in the United States. In reality, no such company exists. It is just a front Defendants use to trick Chinese parents into paying him hundreds of thousands of dollars for nothing.

66. As a result of the Defendants' unfair and deceptive practices, detailed herein, the Plaintiff and other Class members suffered damages because they paid hundreds of thousands of dollars for nothing.

67. Under NY GBL § 349 the Plaintiff and class are not only entitled to *all* of their money back, plus pre-judgment interest, but also trebled (3x) damages and attorneys' fees.

### Count IV – Negligent Misrepresentation

68. The material allegations set forth above are incorporated by reference as if sully set forth herein.

69. The Defendants' fraudulent representations to the Plaintiff and other class members are also actionable as negligent misrepresentations.

70. Due to Defendants' misrepresentations, the Plaintiff and other class members suffered damages because they paid hundreds of thousands of dollars under false pretenses and received nothing.

### Count V– Breach of Contract (Alternative Count)

71. The Plaintiff incorporates the averments in the prior paragraphs, as if restated herein.

72. The Defendants' Contract (Exhibit A) was a farce and a pretense that Defendants used to trick the Plaintiff and other class members into paying him hundreds of thousands of dollars for nothing. But Defendants also materially breached that contract.

73. The Contract required the Defendants to provide educational consulting services to the Plaintiff and other members of the class, but the Defendants provided no such services.

74. The Contract should be rescinded due to Defendants' fraudulent inducement of the Plaintiff and other class members to enter educational consulting contracts. In connection with recission, all of the Plaintiff and the Class' money should be refunded.

75. Even if the contract is not rescinded, Defendants breached the Contract. The Contract required the Defendants to refund half of the money received from the Plaintiff and other members of the alternative sub-class when their children did not obtain admission into the specific colleges listed in the Contract. But Defendants refused to do so, even though the Plaintiff's daughter was not admitted into one of her target schools.

76. Due to Defendants' breach of the Contract, the Plaintiff and other members of the class suffered damages and they are entitled to a full refund. The Plaintiff and other members of

the alternative sub-class are at least entitled to a partial refund of the amount they paid pursuant to the Contract.

### Count VI – Unjust Enrichment

77. The material allegations set forth above are incorporated by reference as if fully set forth herein.

78. As the intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants profited and benefitted from payments that Plaintiff and other class members paid to him, which Defendants wrongfully refused to refund, in whole or in part.

79. Defendants voluntarily accepted these payments with full knowledge and awareness that, as a result of his wrongdoing, Plaintiff and other class members paid based on false pretenses for services that were never provided.

80. An inequity resulted to the Plaintiff and other class members because Defendants kept the benefit and were unjustly enriched.

81. Plaintiff and other class members are entitled to restitution of Defendants' wrongful profits, revenues and benefits to the extent, and in the amount, deemed appropriate by the Court and such other relief as the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, THE Plaintiff demands certification of the class and sub-class proposed herein and as well as entry of judgment in favor of the Plaintiff and Class against Defendants for an award of compensatory damages, treble damages, punitive damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest. Plaintiff also demands all other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(a), Plaintiffs, individually and on behalf of all other similarly situated, hereby demand a trial by jury on all issues so triable.

**Respectfully submitted,**

**s/Mark Hammervold**
Mark Hammervold, IL #6320744[7]
Hammervold Law, LLC
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
mark@hammervoldlaw.com

*Attorney for the Plaintiff and Putative Class*

---

[7] Motion for *pro hac vice* forthcoming.